IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01125-REB-CBS

BENITO MEDINA,
        Plaintiff,
v.

DON PETROSS, Sheriff Deputy,
JANE DOE, Sheriff Deputy, and
SARGENT [sic] RON GOODMAN, Sheriff Deputy,
        Defendants.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

       This civil action comes before the court on the "Motion to Dismiss or, in the

Alternative, for Summary Judgment" filed by Defendants Petross and Goodman on April

2, 2009 (doc. # 33).  Pursuant to the Order of Reference dated January 15, 2009 (doc. #

20) and the memorandum dated April 3, 2009 (doc. # 34), this matter was referred to

the Magistrate Judge.  The court has reviewed the Motion, Mr. Medina's Response

(filed April 27, 2009) (doc. # 36), Defendants' Reply (filed May 15, 2009) (doc. # 40), the

pleadings, the evidence in the record, and the applicable law and is sufficiently advised

in the premises.


I.      Statement of the Case

       Mr. Medina filed his "Second and Final Amended Prisoner Complaint" ("SAC")

on November 21, 2008.  (*See* doc. # 17).  Mr. Medina named as Defendants the

Alamosa County Detention Center ("ACDC"), Mr. Petross, Jane Doe, and Mr.

1

Goodman.  On January 7, 2009, Senior District Judge Weinshienk issued an order

dismissing ACDC as a party.  (*See* "Order to Dismiss in Part and to Draw Case to a

District Judge and to a Magistrate Judge" (doc. # 18)).

The SAC arises out of an altercation between Mr. Medina and another inmate,

Mr. Zamora, while they were incarcerated at ACDC in March of 2007, resulting in a

minor injury to Mr. Medina.  (*See* SAC (doc. # 17) at pp. 3-5 of 8).  Mr. Medina alleges

two claims for relief: Claim One against Defendants Petross, Goodman, and Doe for

"Negligence (Placing Plaintiff in Direct Harm)" and Claim Two against Defendants

Petross and Doe for "Deliberate Indifference to Serious Medical Needs in Violation of

the Eig[h]th Amendment of the United States."  (*See id.*).  Mr. Medina seeks

compensatory and punitive damages.  (*See id.* at p. 8 of 8).[1]


II.     Standard of Review

Defendants Petross and Goodman have moved to dismiss or in the alternative

for summary judgment on several grounds pursuant to Fed. R. Civ. P. 12(b)(1),

12(b)(6), and 56.  As Defendants have moved in the alternative for summary judgment

and submitted exhibits and an affidavit in support of their Motion, the court may properly

---

[1]     On January 4, 2010, the court issued an Order to Show Cause directing Mr. Medina to "either make the required monthly payments for the months of September, October, November, and December 2008 and January, August, October, November, and December 2009, or show cause for his inability to pay."  (*See* "Order Directing Plaintiff to Make Monthly Filing Fee Payments or to Show Cause" (doc. # 48)).  Mr. Medina has not responded to the court's Order to Show Cause and has failed to make the required monthly payments for the months of September, October, November, and December 2008, January, August, October, November, and December 2009, and January and February 2010.

review the Motion under the summary judgment standard.

> Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. A dispute is "genuine" if the issue could be resolved in favor of either party.  A fact is "material" if it might reasonably affect the outcome of the case.
> A movant who does not have the burden of proof at trial must show the absence of a genuine fact issue.  By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense.  In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.

*Wausau Business Ins. Co. v. U.S. Motels Management, Inc.*, 341 F. Supp. 2d 1180,

1182-83 (D. Colo. 2004) (citations omitted).


III.    Undisputed Facts

In his Response, Mr. Medina does not address the undisputed material facts set

forth by Defendants or submit any evidence to show that summary judgment is not

proper.  Nevertheless, as the SAC has been sworn to under penalty of perjury (*see* doc.

# 17 at p. 8 of 8), the court may treat it as an affidavit.  *Green v. Branson*, 108 F.3d

1296, 1301 n. 1 (10th Cir. 1997).  Where the court treats a verified complaint as an

affidavit, whether a party's affidavit in opposition to summary judgment is "sufficient to

create a genuine issue of material fact must be evaluated in light of the principle that

'conclusory allegations without specific supporting facts have no probative value.' "

*Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (quoting *Evers v. General*

*Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)).  "[T]here may be cases where the

sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely conclusory." *Conaway v. Smith*, 853 F.2d 789, 792-93 (10th Cir. 1988).  The court must determine whether Mr. Medina has met his burden of presenting specific facts to overcome Defendants' Motion.

Mr. Medina entered the ACDC on January 29, 2007 for violation of an injunction, contempt of court, and being a fugitive from justice in relation to his prior convictions for child abuse, domestic violence, and trespass.  (*See* Affidavit of Ron Goodman, Exh. A-1 (doc. # 33-2) at ¶¶ 2-4).[2]  The incident giving rise to Mr. Medina's claims occurred on March 26, 2007.  (*See id.* at ¶¶ 5, 6;  Alamosa County Sheriff's Office Incident Narrative 2000007130.doc, Exh. A-2 (doc. # 33-3) at ¶ 1).  Mr. Zamora entered Mr. Medina's cell, fought with Mr. Medina, and ultimately bit Mr. Medina's leg.  (*See id.*).

At the time the incident occurred, Mr. Medina and Mr. Zamora were both on lock down in separate cells and on separate floors for reasons not related to the instant suit.  (*See* Exh. A-2 (doc. # 33-3) at ¶ 1;  Exh. A-1 (doc. # 33-2) at ¶ 7).  In order to leave his

---

[2]     In his Response, Mr. Medina appears to challenge the affidavit as not submitted in its original form, not a true and/or certified copy of the original affidavit, and not supported by sworn or certified documents.  (*See* Response (doc. # 36) at p. 8). Pursuant to Fed. R. Civ. P. 56(e)(1), an affidavit submitted in support of a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  Thus, pursuant to Fed. R. Civ. P. 56(e)(1), an affidavit need not be submitted in its original form.  The signature of the affiant, Ron Goodman, and the seal and verification of the notary at the end of the affidavit are sufficient to assert that the affidavit is a true and certified copy of the original affidavit for summary judgment purposes.  (*See* Exh. A-1 (doc. # 33-2) at p. 4).  Further, the documents referenced in the affidavit are sworn and certified copies based on the affiant, Ron Goodman's, attestation of the same.  (*See* Exh. A-1 (doc. # 33-2) at ¶ 30).

cell during lock down, Mr. Zamora placed toilet paper into the locks of his cell door to prevent the door from closing properly.  (*See* Exh. A-2 (doc. # 33-3) at ¶ 4;  Exh. A-1 (doc. # 33-2) at ¶ 8).  In order to enter Mr. Medina's cell, Mr. Zamora obtained the assistance of another inmate, Mr. Toledo, who was able to leave his cell and unlock Mr. Medina's cell door with two playing cards.  (*See* Exh. A-2 (doc. # 33-3) at ¶¶ 3, 4; Exh. A-1 (doc. # 33-2) at ¶ 9).  Once Mr. Medina's cell door was open, Mr. Zamora entered Mr. Medina's cell and assaulted Mr. Medina.  (*See* Exh. A-2 (doc. # 33-3) at ¶¶ 1, 3; Exh. A-1 (doc. # 33-2) at ¶ 9).  At no time prior to or during the incident did ACDC staff open the cell doors of Mr. Medina or Mr. Zamora.  (*See* Exh. A-1 (doc. # 33-2) at ¶ 10). At no time prior to or during the incident were ACDC staff aware of or assist in Mr. Zamora's access to Mr. Medina's cell.  (*See id.* at ¶ 11).  At no time did Mr. Medina report, either verbally or in writing, to ACDC staff that he feared and/or was threatened by Mr. Zamora.  (*See* Exh. A-1 (doc. # 33-2) at ¶ 28).

Mr. Medina alleges that he suffered injury by Mr. Zamora in the form of "a human bite on his inner thigh that was bleeding" and that he "was in serious pain."  (*See* SAC (doc. # 17) at p. 5 of 8).  Mr. Medina did not notify the ACDC staff of his injury until five days later, on March 31, 2007.  (*See* letter from Alamosa County Sheriff's Office medical director, Ms. Ruybal, Exh. A-4 (doc. # 33-5);  Alamosa County Sheriff's Office daily log, Exh. A-5 (doc. # 33-6) at p. 2 of 3; Exh. A-1 (doc. # 33-2) at ¶¶ 15-17).  On March 31, 2007, Mr. Medina notified former Alamosa County Sheriff's Office Deputies Kaber and Sanchez of his injury.  (*See* Exh. A-5 (doc. # 33-6) at p. 2 of 3; Exh. A-1 (doc. # 33-2) at ¶ 18).  Deputies Kaber and Sanchez immediately advised Ms. Ruybal of the injury.  (*See* Exh. A-4 (doc. # 33-5); Exh. A-5 (doc. # 33-6) at p. 2 of 3;  Exh. A-1

5

(doc. # 33-2) at ¶ 19).   Mr. Medina was immediately transported to the San Luis Valley

Regional Hospital emergency room ("SLVRH") for examination.   (*See* Exh. A-4 (doc. #

33-5); Exh. A-5 (doc. # 33-6) at p. 2 of 3;  Exh. A-1 (doc. # 33-2) at ¶ 20).

SLVRH's records of Mr. Medina's medical examination indicate that: (1) Mr.

Medina's condition was fair and improved; (2) Mr. Medina's general appearance did not

exhibit acute distress; (3) Mr. Medina suffered no vascular compromise; (4) Mr. Medina

suffered no extremity injury, infection, or deformity; (5) Mr. Medina was allowed to leave

the Hospital on foot; and (6) Mr. Medina should see improvement within five days and if

not, he should return.   (*See* report, Exh. A-6 (doc. # 33-7) at pp. 2-6 of 6; Exh. A-1 (doc.

# 33-2) at ¶¶ 21-23).   Mr. Medina never required return to SLVRH.   (*See* Exh.  A-1 (doc.

# 33-2) at ¶ 24; Exh. A-5 (doc. # 33-6) at pp. 2-3 of 3).


IV.     Analysis

A.     Jane Doe Defendant

There is no provision in the Federal Rules of Civil Procedure for the naming of

fictitious or anonymous parties in a lawsuit.   *Watson v. Unipress, Inc.*, 733 F.2d 1386,

1388 (10th Cir. 1984);  *Coe v. U.S. Dist. Court for Dist. of Colorado*, 676 F.2d 411, 415

(10th Cir. 1982).   To the contrary, the Federal Rules provide:

> "[e]very pleading shall contain a caption setting forth the name of the
> court, the title of the action, the file number, and a designation as in Rule
> 7(a).  In the complaint, the title of the action shall include the names of all
> the parties . . . ."

Fed. R. Civ. P. 10(a).  Because anonymous parties are not permitted by the Federal

Rules and Mr. Medina has not identified her, Defendant Jane Doe is properly dismissed

from this civil action.

B.      Claim One for "Negligence (Placing Plaintiff in Direct Harm)"

Defendants argue that Mr. Medina's claim for negligence is barred by the

Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. § 24-10-101 *et seq.*  At

the time of the incident giving rise to Mr. Medina's claims, Defendants were public

employees and, thus, the CGIA applies to Mr. Medina's negligence claim.  The CGIA

provides that,

> [a] public employee shall be immune from liability in any claim for injury . .
> . which lies in tort or could lie in tort regardless of whether that may be the
> type of action or the form of relief chosen by a claimant and which arises
> out of an act or omission of such employee occurring during the
> performance of his duties and within the scope of his employment unless
> the act or omission causing injury was willful and wanton.

C.R.S. § 24-10-118(2)(a).  Thus, Defendants are entitled to immunity with respect to Mr.

Medina's negligence claim unless he shows that Defendants acted willfully and

wantonly.  *Robinson v. City and County of Denver*, 39 F. Supp. 2d 1257, 1263 (D. Colo.

1999).  In order for Mr. Medina to show that Defendants' conduct was willful and wanton

under the CGIA, he must establish that Defendants "purposefully pursued a course of

action or inaction that [they] considered would probably result in the harm to" him.

*Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1141 (D. Colo. 2001).

In his Response, Mr. Medina argues only that Defendants' immunity under the

CGIA is waived, as the injuries giving rise to his negligence claim took place in the

context of operating a correctional facility or jail.  (*See* Response (doc. # 36) at pp. 5, 6

of 11).  The CGIA provides that public employees are immune from liability for all claims

that lie in tort or could lie in tort, unless immunity has been waived under Colo. Rev. Stat. § 24-10-106(1).  Colo. Rev. Stat. § 24-10-118(2)(a).  Pursuant to § 24-10-106(1), immunity can be waived in seven distinct circumstances.  Here, the only potentially applicable waiver is pursuant to Colo. Rev. Stat. § 24-10-106(1)(b), which provides that immunity is waived in an action for injuries resulting from "[t]he operation of any . . . correctional facility . . . or jail."  This provision is inapplicable, however, as Mr. Medina's claim is subject to an exception in the CGIA for the waiver of immunity relating to the operation of a correctional facility or jail.  That exception provides that "[t]he waiver of sovereign immunity created in paragraphs [(b)(1)] of this section does not apply to claimants who have been convicted of a crime and incarcerated in a correctional facility or jail pursuant to such conviction."  Colo. Rev. Stat. § 24-10-106(1.5)(a).  At the time of the incident giving rise to the instant case, Mr. Medina was incarcerated as a convicted inmate.  Mr. Medina fails to respond to the exception to this waiver of immunity based on Mr. Medina's incarceration at ACDC as a convicted inmate.  Thus, the exception in § 24-10-106(1.5)(a) of the CGIA applies to Mr. Medina's negligence claim against Defendants and immunity has not been waived.

Mr. Medina fails to present argument or evidence that Defendants purposely engaged in conduct that they considered would result in harm to him.  Mr. Medina's failure to demonstrate Defendants' willfulness and wantonness is fatal to his state tort law claim for negligence.  In the absence of evidence of willfulness and wantonness by Defendants, summary judgment is appropriate against Mr. Medina and in favor of Defendants on the negligence claim as Defendants are immune from suit for that claim under the CGIA.  *See Zerr v. Johnson*, 894 F. Supp. 372, 377 (D. Colo. 1995) (granting

8

summary judgment on tort claim for failure of proof with respect to willfulness and wantonness).

Further, Mr. Medina's state law tort claim is properly dismissed based on his failure to comply with the notice requirements of the CGIA.  Pursuant to Colo. Rev. Stat. § 24-10-109(1), "any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, . . . shall file a written notice" to the public employee within 180 days of the discovery of the injury and that such notice is a jurisdictional prerequisite to suit.[3]  Colo. Rev. Stat. § 24-10-109(2) contains the requirements for a notice of tort claim:

> (a) The name and address of the claimant and the name and address of his attorney, if any;
> (b) A concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of;
> (c) The name and address of any public employee involved, if known;
> (d) A concise statement of the nature and the extent of the injury claimed to have been suffered;
> (e) A statement of the amount of monetary damages that is being requested.

A claimant must substantially comply with the notice requirements of the CGIA. *Woodsmall v. Regional Transp. Dist.*, 800 P.2d 63, 68 (Colo. 1990).  "Substantial compliance requires a claimant, within 180 days of the discovery of an injury, to file written notice with the public entity and to make a good faith effort to include within the

---

[3]     The statutory notice provisions of the CGIA apply when federal courts hear Colorado tort claims under supplemental jurisdiction.  *Maestas v. Lujan*, 351 F.3d 1001, 1013-14 (10th Cir. 2003) (citing *Renalde v. City & County of Denver, Colo.*, 807 F. Supp. 668, 675 (D. Colo. 1992) (holding that Colorado tort claims brought by a private plaintiff under pendent jurisdiction are subject to the notice provisions of the CGIA as a jurisdictional prerequisite to suit).

notice, to the extent the claimant is reasonably able to do so, each item of information listed in section 24-10-109(2)." *Id.* at 69.  Compliance with the notice requirement is jurisdictional and failure to comply with the notice requirements is "an absolute bar to suit." *Maestas*, 351 F.3d at 1014.  *See also* C.R.S. § 24-10-109(1).

The evidence before the court indicates that prior to filing the instant suit, Mr. Medina did not provide Defendants with a notice of claim pursuant to Colo. Rev. Stat. § 24-10-109(1). (See Exh. A-1 (doc. # 33-2) at ¶ 29).  Mr. Medina has not contested Defendants' evidence or disputed that he did not provide Defendants with a notice of claim.  If a claimant fails to comply with the 180-day notice provision of the CGIA, a court must dismiss the matter for lack of subject matter jurisdiction.  *City and County of Denver v. Crandall*, 161 P.3d 627, 633 (Colo. 2007).

In addition to complying with the notice provisions of Colo. Rev. Stat. § 24-10-109(1), "a plaintiff must plead compliance with the CGIA's notice provisions in the complaint to avoid dismissal."  *Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 840 (10th Cir. 2003).  Mr. Medina failed to plead compliance with C.R.S. § 24-10-109(1) in the SAC.

For lack of evidence of willfulness and wantonness by Defendants and for lack of subject matter jurisdiction based on the failure to comply with the notice provisions of Colo. Rev. Stat. § 24-10-109, Defendants are entitled to summary judgment on Mr. Medina's negligence claim.

C.      Claim Two "Deliberate Indifference to Serious Medical Needs in Violation of the Eig[h]th Amendment . . . ." [4]

Whether Mr. Medina was a pretrial detainee protected under the Fourteenth Amendment's Due Process Clause or a convicted inmate protected under the Eighth Amendment when the events forming the basis of this lawsuit occurred (*see* SAC (doc. # 17) at p. 4 of 8 ("On or about March 24, 2007, the Plaintiff went to court to be sentenced."), courts apply an analysis identical to that applied in Eighth Amendment cases in determining whether a pretrial detainee's rights were violated.  *See Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) ("Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement . . ., the Eighth Amendment standard provides the benchmark for such claims.").  *See also Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) ("Pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, [and courts in this circuit] appl[y] an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983.");  *Howard v. Dickerson*, 34 F.3d 978, 980 (10th Cir. 1994) (court must apply the standards applicable under the Eighth Amendment in reviewing pretrial detainee's medical treatment claims);  *Martin v. Bd. of County Comm'rs*, 909 F.2d 402, 406 (10th Cir. 1990) ("pretrial detainees are entitled under the fourteenth amendment's due process clause to the same degree of protection regarding medical attention afforded convicted inmates under the eighth amendment.").

"[P]risoners have an Eighth Amendment right to adequate medical care. . . ." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001).  To demonstrate an Eighth

---

[4]     There are no allegations in Claim Two regarding Defendant Goodman.

Amendment violation, an inmate must satisfy both objective and subjective elements. The objective component is met if the deprivation is "sufficiently serious," *i.e.*, one that "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Oxendine*, 241 F.3d at 1276 (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir .1999)). *See also Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (a "serious medical need" is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention) (citations omitted). As Mr. Medina's claim is that medical treatment was delayed rather than refused, he is required to make an additional showing that the delay in receiving care caused substantial harm. *See Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) ("[A] delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm. The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain.") (internal quotations and citations omitted).

The subjective component of an Eighth Amendment claim is met if the defendant "knows of and disregards an excessive risk to inmate health or safety." *Sealock*, 218 F.3d at 1209. "In keeping with the principle that government officials are generally afforded wide latitude when fulfilling their discretionary functions, . . . however, in cases where prisoners allege that inadequate or delayed medical care violated their Eighth Amendment rights, it has been established that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately indifferent to the serious medical needs of prisoners in their custody.'" *Id. See also Estelle v. Gamble*, 429 U.S. 97, 104 (1976)

(prison officials violate the Eighth Amendment if their "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain"); *Sawyer v. County of Creek*, 908 F.2d 663, 667 (10th Cir. 1990) (detainee cannot demonstrate a violation of substantive due process upon a lesser showing than deliberate indifference to serious medical needs), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993).  "Deliberate indifference" does not require a showing of express intent to harm, rather, it is enough that the official acted or failed to act despite his or her knowledge of a substantial risk of serious harm.  *Mata*, 427 F.3d at 752 (citations omitted).

"A delay in treatment that is unintentional or unavoidable, even though it may result in the inmate suffering additional harm, is not actionable."  *Grassi v. Corrections Corporation of America,* 2008 WL 5172154 * 5 (D. Colo. 2008) (citation omitted).[5] "Thus, to prove a claim of deliberate indifference predicated on the delay in providing medical care, an inmate must show: (i) that he suffered from a serious medical need; (ii) that medical care to address that need was unnecessarily delayed; (iii) that the delay manifested the defendant's subjective disregard for the inmate's needs; and (iv) that the delay caused the inmate to suffer substantial harm, whether in the form of significant pain or permanent physical injury."  *Id.*

As to the objective component of the Eighth Amendment claim, the court assumes without specifically deciding that Mr. Medina had a serious medical need for

---

[5]   A copy of this unpublished decision is attached to this Recommendation.

13

purposes of an Eighth Amendment claim.  *Cf. Andujar v. Rodriguez*, 486 F.3d 1199,

1203-04 (11th Cir. 2007) (holding that a dog bite that caused more than superficial

wounds, impaired walking, and left the plaintiff crying in pain could be deemed

objectively serious), *cert. denied*, 552 U.S. 954 (2007).

As to the subjective component, Mr. Medina has not come forward with facts that

would show that Defendant Petross in any way delayed treatment or manifested

subjective disregard for Mr. Medina's medical needs.  Mr. Medina has alleged that

Defendant Petross did not respond "for approximately three (3) hours" after he started

pushing "his in-cell intercom[ ] button" and that he was not provided medical treatment

for the "bite mark in his inner thigh" from March 24, 2007 until March 31, 2007.  (*See*

SAC (doc. # 17) at p. 5 of 8).  Defendant Petross has presented evidence that Mr.

Medina did not notify him of the injury.  The evidence indicates that Mr. Medina notified

Alamosa County Sheriff's Office Deputies Kaber and Sanchez of his injury on March 31,

2007, at which time Mr. Medina was immediately transported to the SLVRH emergency

room for examination.  (*See* Exh. A-4 (doc. # 33-5);  Exh. A-5 (doc. # 33-6) at p. 2 of 3;

Exh. A-1 (doc. # 33-2) at ¶¶ 15-18, 20).

Mr. Medina has presented nothing more than conclusory allegations that

Defendant Petross did not answer his requests for medical treatment.  Mr. Medina's

allegations are unsupported by any evidence that he notified Defendant Petross of his

injury.  Mr. Medina has failed to demonstrate that he advised Defendant Petross or that

Defendant Petross otherwise had knowledge of his injury.  Mr. Medina's conclusory

allegations unsupported by any probative evidence are insufficient on summary

judgment.  "Evidence presented must be based on more than mere speculation,

14

conjecture, or surmise to defeat a motion for summary judgment." *Southway v. Central Bank of Nigeria*, 149 F. Supp. 2d 1268, 1274 (D. Colo. 20010 (internal quotation marks and citations omitted).  *See also D'Amico v. City of New York*, 132 F.3d 145, 149 (2nd Cir. 1998) (party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful").  As the evidence does not show that Defendant Petross was notified of Mr. Medina's injury, Mr. Medina has not sufficiently demonstrated that Defendant Petross acted with the requisite state of mind, deliberate indifference, to preclude summary judgment regarding his Eighth Amendment claim.

Further, while the court may assume that Mr. Medina experienced pain at the time of the injury, Mr. Medina has not shown that the alleged failure to provide him timely treatment for the bite mark on his thigh caused him to suffer substantial harm. SLVRH's records of Mr. Medina's medical examination indicate that one week after the injury occurred, Mr. Medina was not in acute distress, he suffered no vascular compromise, extremity injury, infection, or deformity, he was able to walk out of the hospital; his condition at the time of discharge was improved, and his pain level was zero on a scale of zero to ten.  (*See* Exh. A-6 (doc. # 33-7) at pp. 2-6 of 6; Exh. A-1 (doc. # 33-2) at ¶ 21).  *See also White v. State of Colorado*, 82 F.3d 364, 366-67 (10th Cir. 1996) (two-year delay in surgery on inmate's leg did not violate the Eighth Amendment because the delay caused no further damage to the leg).

In the absence of specific evidence showing that Defendant Petross in any way delayed treatment for Mr. Medina's bite mark, much less evidence suggesting that Defendant Petross was recklessly indifferent to Mr. Medina's situation or caused him

15

substantial harm, Defendant Petross is entitled to summary judgment on Claim Two.

D.     Failure to Exhaust Administrative Remedies Claim Two

Defendant Petross is also entitled to summary judgment on Claim Two based on

Mr. Medina's failure to exhaust administrative remedies.  The PLRA states that: "[n]o

action shall be brought with respect to prison conditions under section 1983 of this title,

or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted." 42 U.S.C. §

1997e(a). The PLRA's requirement that an inmate exhaust all available administrative

remedies before initiating suit is "mandatory," whether or not such remedies "meet

federal standards."  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  This "exhaustion

requirement applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some

other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

There was an established inmate administrative grievance procedure at the time

Mr. Medina was at ACDC.  (*See* Exh. A-3 (doc. # 33-4) at p. 4 of 4; see also Exh. A-1

(doc. # 33-2) at ¶ 25.)  The ACDC's inmate grievance procedures are part of the Rules

& Regulations that were posted in the common area of the ACDC for all inmates to

observe and read.  (*See* Exh. A-1 (doc. # 33-2) at ¶ 12).  The Rules and Regulations

stated that, while inmates are incarcerated at ACDC, they will be provided access to

necessary medical care and, in the event of a medical emergency, inmates are to notify

the Facility staff immediately.  (*See* Rules & Regulations, Exh. A-3 (doc. # 33-4) at p. 3

of 4;  Exh. A-1 (doc. # 33-2) at ¶ 13.).  The Rules & Regulations state in pertinent part

16

that if an inmate has a complaint pertaining to the ACDC, the inmate is to file a written grievance using an inmate request form and may file the grievance with either his floor officer, the ACDC sergeant, or the Undersheriff as an appeal. (*See* Exh. A-3 (doc. # 33-4) at p. 4 of 4; Exh. A-1 (doc. # 33-2) at ¶ 26).  While incarcerated at ACDC, Mr. Medina did not file any grievances or utilize the inmate grievance procedures in any way. (*See* Exh. A-1 (doc. # 33-2) at ¶ 27).

In his Response, Mr. Medina addresses the issue of exhaustion of administrative remedies only by stating that an "inmate is not required to specifically plead or demonstrate exhaustion in his complaint."  After *Jones v. Bock*, 549 U.S. 199, 211 (2007), a failure to exhaust administrative remedies constitutes an affirmative defense which must be pled and proved by Defendants.  *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).  (*See* Answer (doc. # 30), Affirmative Defenses ¶ 8 ("Defendants allege that Plaintiff has failed to exhaust his available administrative remedies.")).  Defendants have moved for summary judgment and submitted evidence pertaining to Mr. Medina's failure to exhaust administrative remedies.  As Defendants' Motion has been properly supported, the burden shifts to Mr. Medina to show, by tendering competent evidence, that summary judgment is not proper.

Mr. Medina has not provided any competent evidence to demonstrate that he properly exhausted his administrative remedies as to his Claim Two.  Mr. Medina has not disputed that he did not file a grievance or utilize the grievance procedure in any way.  In his pleadings, Mr. Medina admits that he did not exhaust the grievance process.  (*See* SAC at p. 7 of 8).  The undisputed record demonstrates Defendants' affirmative defense that Mr. Medina did not exhaust his available administrative

17

remedies.  For this reason also, Defendant Petross is entitled to summary judgment on Mr. Medina's Claim Two.

E.      Qualified Immunity

To the extent that Mr. Medina is suing Defendant Petross in his individual capacity under § 1983 in Claim Two, Defendant Petross raises the defense of qualified immunity.  Whether Defendant Petross is entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1229 (2008).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted).  "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.*  The court having concluded above that Defendant Petross is entitled to summary judgment on Mr. Medina's Claim Two for lack of evidence of any constitutional violation, Defendant Petross is entitled to qualified immunity.

F.      Unpled Claim for Respondeat Superior Liability

In his Response, Mr. Medina indicates he "will seek to amend the complaint"

because he "has discovered new possible claims found with[in] the motion to dismiss. .

." for *respondeat superior* liability against "Alamosa County, and or, the Alamosa County

Detention Center [, i]ncluding the Alamosa County Sheriff's Office."  (*See* Response

(doc. # 36) at pp. 7, 9-10).

First, Mr. Medina's additional claim for *respondeat superior* liability is not properly

brought in his Response and Mr. Medina has not moved for leave to amend his

pleadings.  *See Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A

plaintiff may not amend his complaint through arguments in his brief in opposition to a

motion for summary judgment.") (citations omitted).

Second, while the Federal Rules of Civil Procedure provide that leave to amend a

party's complaint "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a),

Tenth Circuit "law establishes a limitation to this principle: the district court may dismiss

without granting leave to amend when it would be futile to allow the plaintiff an

opportunity to amend his complaint."  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213,

1219 (10th Cir. 2006) (citation omitted).  The court has previously dismissed Alamosa

County Detention Center from the SAC.  (*See* "Order to Dismiss in Part and to Draw

Case to a District Judge and to a Magistrate Judge" (doc. # 18) at p. 3 of 6).  Alamosa

County Detention Center is "an improper party" because it "is not a separate entity from

Alamosa County and, therefore, is not a person under 42 U.S.C. § 1983."  (*See id.*).

Neither Alamosa County nor the Alamosa County Sheriff's Office can be held liable for

the actions of its employees under the theory of *respondeat superior*.  *See Lopez v.*

19

*LeMaster*, 172 F.3d 756, 762-63 (10th Cir. 1999) ("The County may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees.") (internal quotation marks and citation omitted); *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998) ("A government entity may not be held liable under a *respondeat superior* or vicarious liability theory, but must be shown to have contributed to the constitutional violation through execution of its policy or custom.") (citation omitted).

Third, as the court has determined that Mr. Medina has failed to demonstrate that Defendant Petross engaged in constitutional violations or was deliberately indifferent to his serious medical needs, Mr. Medina cannot establish *respondeat superior* liability. *See Martinez v. Mafchir*, 35 F.3d 1486, 1491 (10th Cir. 1994) (without an underlying violation, there can be no supervisory liability) (citation omitted).

Fourth, Mr. Medina fails to state any claim against "Alamosa County, and or, the Alamosa County Detention Center [, i]ncluding the Alamosa County Sheriff's Office."  A plaintiff seeking to impose liability on a governmental entity "under section 1983 must identify a municipal 'policy' or 'custom' causing their injury."  *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1177 (10th Cir. 2003) (citation omitted).  *See also Bryan County v. Brown*, 520 U.S. 397, 403 (1997) ("we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.") (citations omitted).  Mr. Medina has not alleged any unconstitutional policy or custom attributable to a governmental policymaker.  In the absence of allegations of policy or custom, Mr. Medina fails to state a claim for liability against "Alamosa County, and or, the Alamosa County Detention

20

Center [, i]ncluding the Alamosa County Sheriff's Office." *See Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir.1998) (requiring proof that policy or custom is the moving force behind governmental employee's constitutional violation); *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 549 (D. Md. 2003) (complaint fails to state a claim because the plaintiffs "have not alleged sufficient facts to establish that the search . . . was the result of a custom or policy" of police department).

Accordingly, IT IS RECOMMENDED that the "Motion to Dismiss or, in the Alternative, for Summary Judgment" filed by Defendants Petross and Goodman on April 2, 2009 (doc. # 33) be GRANTED and summary judgment be entered in favor of Defendants and against Plaintiff, with each party to bear his, her or its own costs and attorney fees.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street,*

*Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely

objections may bar *de novo* review by the District Judge of the Magistrate Judge's

proposed findings and recommendations and will result in a waiver of the right to appeal

from a judgment of the district court based on the proposed findings and

recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80

(10th Cir. 1999) (District Court's decision to review a Magistrate Judge's

recommendation *de novo* despite the lack of an objection does not preclude application

of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal*

*Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain

portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal

those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir.

1992) (by their failure to file objections, plaintiffs waived their right to appeal the

Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122

(10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require

review).

      DATED at Denver, Colorado this 25th day of February, 2010.

                                   BY THE COURT:


                                   ___s/Craig B. Shaffer_____
                                   United States Magistrate Judge